The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner W. Joey Barnes. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury by accident giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act with defendant-employer regularly employing three or more employees, one of whom was plaintiff.
2. CNA Insurance Companies provided workers' compensation coverage for defendant-employer at the time of the alleged injury by accident.
3. The parties stipulated into evidence a Form 22 marked as Stipulated Exhibit 2 for purposes of calculating plaintiff's average weekly wage.
4. A packet of medical records numbered pages 1 through 36 was stipulated into evidence by the parties, marked as Stipulated Exhibit 1.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff began working with the defendant, Oxford Homes, in September 1993. Prior to this he had worked for another local industry, Alpine Structures, for eight years.
2. The plaintiff was employed as an electrical tester with Oxford Homes which required him to check electrical circuits during the production process. In this position, the plaintiff checked electrical circuits and performed certain wiring in the mobile homes as one of the final stages of manufacturing. After the plaintiff completed testing and installation and lighting was available in the mobile homes, finish crews could complete their work.
3. Before October 18, 1993 the plaintiff was able to perform his job and stay well ahead of the finishing crew. Paul Juday, the plant manager, was not aware of any complaints about the quality or pace of the plaintiff's work prior to the injury date.
4. On October 18, 1993 the plaintiff was working outside of a mobile home on a ladder approximately four feet above the ground. As he worked, the ladder began to slide out from under him. To avoid injuring himself, the plaintiff jumped backwards from the ladder to the ground. In doing so, he landed in a scissors-like position with his weight distributed more on the left leg and jamming the left leg and hip as he fell on his side.
5. Thereafter, the plaintiff experienced a painful sensation in his left hip which worsened over the day. After the fall, the plaintiff reported the incident to a supervisor, Earl Bumpass, on the same day. The plaintiff also reported the incident and his discomfort to his wife upon returning home that night.
6. Plaintiff talked with the front office the following day and on October 20 he was first seen by Dr. Vu, the defendant's company doctor. At that time Dr. Vu observed that the plaintiff had a left hip contusion although x-rays of the hip and leg area were normal. His findings significantly included tenderness over the left sciatic notch and severe pain.
7. On subsequent visits on October 22 and October 26, 1993 plaintiff complained of more pain in his left hip.
8. On October 26, 1993 plaintiff returned to work. Plaintiff worked from October 26, 1993 until November 16, 1993 when he resigned due to intolerable pain and his inability to keep up with production. During the interval, the plaintiff testified that he had difficulty in performing the work and that his pace slowed. Co-worker, Lonnie Anderson, who was with the finish crew, testified that where the plaintiff had worked well ahead of the trim crews before his injury, he could not keep up after his return to work. Anderson also noted that the plaintiff complained of left hip and back pain on occasions after his return to work.
9. Former manager, Paul Juday, reported that the week before the plaintiff's resignation on November 16, the line supervisor had reported that the plaintiff was holding up the line. According to Juday, the plaintiff stated that he could not perform the job unless a second man was assigned to help him and chose to resign because of "too much pressure."
10. After leaving Oxford Homes, the plaintiff sought care through his personal physicians at the Beckford Clinic in early December 1993. Notes from that Clinic document the plaintiff's left hip-leg pain and include the diagnosis of lumbar-sacral sprain. From the Beckford Clinic, plaintiff was evaluated by Dr. Stuart Schwartzburg, surgeon, and the Maria Parham Hospital Rehabilitation Department. The plaintiff's left hip and leg symptoms were related to his back condition. Possible L-5, S-1 disc involvement were noted following functional evaluation testing at Maria Parham.
11. Plaintiff was referred to a neurosurgeon on December 30, 1993. However, because neurosurgical evaluation was not approved by the carrier, this evaluation did not occur. Neither an MRI nor a CAT scan was performed.
12. The plaintiff was seen by Dr. J. Lawrence Frank on June 7, 1994. An MRI confirmed the existence of a herniated disc and Dr. Frank performed a hemilaminectomy on October 14, 1994 resulting in almost complete resolution of hip and leg symptoms.
13. Dr. Frank's testimony was that plaintiff suffered from a herniated disc, and that in his opinion plaintiff's herniated disc resulted from the work injury of October 18, 1993. Also, Dr. Frank testified that plaintiff's symptoms, as reported to various doctors following the accident, were consistent with the ultimate surgical finding of a herniated disc.
14. Dr. Frank further relied upon the medical records from the Beckford Avenue Medical Center and Dr. Stuart Schwartzburg. Dr. Frank was of the opinion that the medical records from Beckford Avenue Medical Center and Dr. Stuart Schwartzburg were consistent with his surgical finding of a herniated disc.
15. The Full Commission finds that based upon the testimony and the evidence in the record, plaintiff does, in fact, suffer from a herniated disc.
16. As the result of his herniated disc which was caused by his employment with defendant-employer, plaintiff has been unable to earn wages in his former position with defendant-employer or in any other position from October 18, 1993 and continuing thereafter through the present.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On October 18, 1993 plaintiff sustained an injury by accident arising out of and in the course of his employment resulting in a herniated disc. N.C.G.S. § 97-2(6).
2. Plaintiff is entitled to temporary total disability benefits from October 18, 1993 and continuing at a rate of $195.98 per week so long as he remains temporary totally disabled, subject to a change of condition, medical or employment. N.C.G.S. § 97-29.
3. The defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the injury by accident giving rise hereto. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for workers' compensation benefits for his injury by accident which occurred on October 18, 1993 must, under the law, be and is hereby GRANTED.
2. Plaintiff is entitled to temporary total disability benefits from October 18, 1993 and continuing at a rate of $195.98 per week so long as he remains temporary totally disabled, subject to a change of condition, medical or employment.
3. The defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the injury by accident giving rise hereto.
4. At this time a reasonable attorney fee in the amount of twenty-five percent of the accrued compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the same and forwarded directly thereto. For the balance of his fee, defendant-employer shall forward every fourth check due directly to plaintiff's counsel.
5. Defendants shall bear all costs.
FOR THE FULL COMMISSION
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 5/17/96